UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEREK FORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00721-JMS-MPB |
| | ) |
| DIANE ELROD, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S
UNOPPOSED MOTION FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Derek Ford alleges that Defendant Dr. Diane Elrod, D.O., violated his Eighth Amendment rights by failing to treat a finger that he fractured playing basketball. Dkt. 21. Dr. Elrod disputes this claim and seeks summary judgment. Mr. Ford did not respond. Because there is no evidence that Dr. Elrod was deliberately indifferent to Mr. Ford's serious medical needs, her motion for summary judgment, dkt. [54], is **GRANTED.**

**I. Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

1

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. In this case, Dr. Elrod has met that burden through her unopposed motion for summary judgment.

Mr. Ford failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); see S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment [i]s proper given the undisputed facts.'" *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp*., 653 F.3d 532, 543 (7th Cir. 2011)).

## II. Undisputed Facts

Mr. Ford is a state prisoner housed at the Pendleton Correctional Facility. From July 23, 2018 until January 24, 2020, Dr. Elrod was employed as a physician by Wexford of Indiana, LLC. Dkt. 54-2 at 2, ¶ 2.

### A. Injury

On December 7, 2019, Mr. Ford was playing basketball at recreation when he tripped and fell awkwardly on his hand. Dkt. 54-1 at 7 (Ford Depo. at p. 20, lines 17-24; p. 21, lines 1-2). Mr. Ford advised the correctional staff at recreation of his injury and he was sent to the nurses' station.

While there, he was provided an Ace bandage and Tylenol and told he would be recommended to see the doctor. *Id.* (Ford Depo at p. 21, lines 3-11).

After 30 days, Mr. Ford began submitting health care request forms requesting to see a doctor because he was still in extreme pain and his hand was swollen. *Id.* (Ford Depo. at p. 21, lines 12-19).

**B. Treatment of the Injury**

On January 2, 2020, Mr. Ford was seen by Dr. Lindiwee-Yaa Randall-Hayes. At that appointment, Dr. Randall-Hayes performed a physical examination on Mr. Ford's right hand. Dr. Randall-Hayes observed the right hand was swollen, that Mr. Ford experienced pain with range of motion, and that the neurovascular system was intact. Dr. Randall-Hayes diagnosed Mr. Ford with a contusion, sprain, or fracture and ordered an x-ray for additional diagnostic evaluation. Dkt. 54-2 at 2-3 and 7-8.

On January 3, 2020, pursuant to a health care request, Mr. Ford had a nurse visit with Kathleen A. Smith, RN. There, Mr. Ford complained of pain in his right little finger as a result of a basketball injury suffered on December 7, 2019. Nurse Smith reported that the finger was swollen, painful, and immobile. Mr. Ford was referred to the treating physician for the x-ray and further treatment. Nurse Smith splinted Mr. Ford's little finger to his ring finger and directed that he treat the finger with ice and elevation. Dkt. 54-2 at 2 and 9-11; dkt. 54-1 at 8 (Ford Depo. at p. 24, lines 15-24; p. 25, lines 1-3).

Around January 11, 2020, Mr. Ford saw Victoria Crawford, FNP, who placed Mr. Ford's hand in a gutter splint held securely with an Ace bandage to prevent his pinky from moving. Dkt. 54-1 at 7 (Ford Depo. at p. 21, line 24, p. 22, lines 4-8). NP Crawford reported that Mr. Ford had been issued an Ace bandage, but he had not worn it because it was not helping. Mr. Ford presented

positively for joint pain. Upon physical examination, NP Crawford found that Mr. Ford had pain with passive movement. She found a displaced joint at the distal end of the 5th metacarpal. NP Crawford noted that the x-ray had been ordered, but not completed. Dkt. 54-2 at 11-15. NP Crawford noted the x-ray would need to be completed as soon as possible and Mr. Ford "referred to ortho[pedist.]" Dkt. 54-2 at p. 13. NP Crawford applied a gutter splint to Mr. Ford's hand. *Id.*

Medical care that is provided outside of the prison facility or that requires a specialist that is not located at the prison facility every day requires an outpatient request. The outpatient request is then sent to the regional medical director for Wexford of Indiana, LLC for approval. Dkt. 54-2 at 2-3; Dkt. 54-2 at 12-15. There is no evidence that NP Crawford authorized a referral or request to the regional medical director for Mr. Ford to be seen by an orthopedic specialist. Dkt. 54-2 at 3.

**C. Dr. Elrod's January 17, 2020, Examination**

Mr. Ford received the x-ray on his hand on January 14, 2020. Dkt. 54-1 at 9 (Ford Depo at p. 26, lines 6-7). Dr. Elrod saw Mr. Ford on January 17, 2020, for the first and only time. Dr. Elrod reviewed the x-rays of Mr. Ford's hand. Dkt. 54-2 at 4.

Mr. Ford advised Dr. Elrod that he could not ball his hand up, that he was in extreme pain, and that it had been a month since "anything has been done to my hand and that [he] needed to see the hand specialist, which they already had referred me to in the beginning." Dkt. 54-1 at 8 (Ford Depo. at p. 22, lines 16-24). Dr. Elrod advised Mr. Ford that she was going to "cancel that" and said, "I don't think you need to go to the hand specialist. We're just going to see how it heals just where you're at." *Id.* She advised Mr. Ford that the injury was not that bad, it was just his pinky. *Id.* (Ford Depo. at p. 23, lines 1-7).

Dr. Elrod diagnosed Mr. Ford with suffering from a subacute fracture of the 5th digit of his

4

right hand. The x-rays revealed that Mr. Ford's December 7, 2019 injury had already begun healing. Dkt. 54-2 at 4 and 17-18. Her treatment notes report that "[Mr. Ford] was told by NP that he would be sent to hand specialist … however there is slight movement of the joints of that finger and I think we should not do this at this time. I have asked him to exercise the joints to get better ROM and if this fails, we will consider submitting an OPR." *Id.* at 17.

Treatment for a subacute fracture consists of gradual, increased use of the body part and exercises to prevent and reduce stiffness, strengthen weakened muscles, breakdown scar tissue, reduce inflammation, and increase range of movement. Dkt. 54-2 at 4. Dr. Elrod did not think it was medically necessary to submit an outside provider request because Mr. Ford exhibited slight movement of the joints of the injured finger. Mr. Ford was advised and educated on exercising his joints to facilitate better range of motion. But Mr. Ford was further advised, if this treatment plan proved unsuccessful, medical would reevaluate the need to send him to an outside provider. *Id.* at 4.

On January 24, 2020, Dr. Elrod's employment with Wexford concluded and she had no further authority to provide medical care to the Mr. Ford. Dkt. 54-2 at 5.

### III. Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th

5

818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

For the purposes of this motion, the Court assumes that Mr. Ford's fractured finger is a serious medical need. To survive summary judgment then, Mr. Ford must show that Dr. Elrod acted with deliberate indifference—that is, that she consciously disregarded a serious risk to his health. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Mr. Ford "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id*. "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted). The Seventh Circuit has "held that a jury can infer deliberate indifference when a treatment decision is 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Id.* (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *Id.* at 241-42.

Mr. Ford alleges that Dr. Elrod was deliberately indifferent to his finger injury. Dr. Elrod disputes this allegation. She argues that there is no evidence that she was subjectively indifferent to Mr. Ford's injury. Dr. Elrod was first made aware of Mr. Ford's injury on January 17, 2020. There is no evidence that Dr. Elrod had any involvement in his treatment prior to her appointment with him. At that appointment, she reviewed Mr. Ford's x-rays and diagnosed his broken finger. She recognized that his injury was healing and prescribed joint exercises to aid in healing. Dr.

6

Elrod specifically advised Mr. Ford that an outside specialist was a possibility if her proposed treatment did not work.

There is no evidence that Dr. Elrod rescinded an order for Mr. Ford to see an outside specialist, nor is there any evidence that an order for an outside specialist was issued in the first place. Instead, the idea that an outside consultation was necessary was formed prior to any diagnostic imaging. There is no basis to conclude that Dr. Elrod's joint exercise instructions were not based on her medical judgment after reviewing the x-rays. This is true even if another medical provider would have prescribed a different course. *See Norfleet*, 439 F.3d at 396 ("[A] difference of opinion among physicians on how an inmate should be treated cannot support a finding of deliberate indifference."); *Petties*, 836 F.3d at 729 ("[E]vidence that some medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim."). In the absence of any evidence of deliberate indifference, Dr. Elrod is entitled to judgment as a matter of law.

### IV. Conclusion

The defendant's unopposed motion for summary judgment, dkt. [54], is **GRANTED.** Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 12/16/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

DEREK FORD
251048
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Bryan Findley
CASSIDAY SCHADE LLP
bfindley@cassiday.com

Heather Terese Gilbert
CASSIDAY SCHADE LLP
hgilbert@cassiday.com